IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 110-131 |
| | ) | |
| TRISTAN EDWARD WILLIAMS | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has charged Defendant Tristan Edward Williams with one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The matter is now before the Court on Defendant's motion, and amended motion, to suppress. (Doc. nos. 32, 38.) For the reasons developed below, the Court **REPORTS** and **RECOMMENDS** that the motions to suppress be **DENIED**.

### I. PROCEDURAL BACKGROUND

#### A. Early Stages of the Case

Defendant was arraigned on the charges in this case on August 24, 2010. (Doc. no. 13.) Defendant gained his pre-trial release by posting a bond of $25,000 secured by 10% cash, and as a condition of his release, he was placed in the custody of his mother, who lives in California. (Doc. no. 16.) Defendant is represented by retained counsel, Mr. Jacque Hawk and Mr. Charles Lyons, III. The Court announced at arraignment that all pre-trial motions were to be filed within ten days, and the Court's instructions were memorialized in its August 25, 2010 Arraignment Order (doc. no. 20, p. 1).

Defendant filed multiple motions on September 3, 2010, including a motion for an extension of time to file motions. (See doc. nos. 23-29.) The Court granted Defendant's request for an extension of time to file motions, setting the new deadline at September 28, 2010. (Doc. no. 33.) On September 7, 2010, Defendant filed three additional motions, including a motion to suppress. (See doc. nos. 30-32.) The motion to suppress was filed "to challenge the legality of the search and seizure of evidence, specifically, evidence obtained or derived from the seizure of a computer and an internal hard drive that had been removed from Defendant's computer and the contents from" Defendant's home. (Doc. no. 32, p. 1.) Specifically, Defendant challenged the manner in which Special Agent Stacie Lane ("SA Lane") of the Innocent Images Unit of the FBI located the images at issue in this case and then connected the images to Defendant's IP address in order for Special Agent Ozden ("SA Ozden") to obtain a search warrant. (See id. at 1-4.) Notably, however, the motion was not supported by any affidavit and only attached three (non-sequential) pages of the Application and Affidavit for Search Warrant ("Search Warrant Application") at issue in this case.

In what would be the first of many such motions, on September 27, 2010, Defendant filed a motion for an extension of time to file an expert affidavit in support of his motion to suppress. (Doc. no. 37.) Defendant argued that he had been unable to raise the necessary funds to hire an expert but that "it is necessary that the computer forensic expert be able to fully test and examine the computer forensic evidence in this case" prior to Defendant being

able to prepare a proper affidavit in support of the motion to suppress.[1] (Id. at 2.) Defendant made no argument in the motion for an extension of time as to why he would be unable to timely provide his own affidavit in support of his motion.[2]

On September 28, 2010, Defendant filed his amended motion to suppress, again without an affidavit from Defendant, and again with three (non-sequential) pages of the Search Warrant Application, along with three (non-sequential) pages of a Board Hearing conducted at Shaw Air Force Base, South Carolina, on October 20, 2009 ("Board Hearing"), related to Defendant's discharge from the armed services.[3] Again, Defendant claimed that because he organizes his computer files in certain way, the information presented in the Search Warrant Application was "either a misrepresentation or omission." (Compare doc. no. 32, p. 3, ¶ 5, with doc. no. 38, p. 3, ¶ 5.) According to the amended motion, SA Lane's

---

[1]Defendant also suggested that he needed an extension of time so that his proposed expert could prepare an affidavit in support of the motion for forensic examination of the computer(s) at issue in this case. (Doc. no. 37, pp. 2-3.) However, at the time Defendant filed his motion for an extension, the motion to conduct a forensic examination had already been granted in part and denied in part. (See doc. no. 36.) Indeed, as of September 24, 2010, the Court had explained that 18 U.S.C. § 3509(m) prohibited the type of expert examination that Defendant was proposing be done once an expert was hired. (Id.)

[2]For example, paragraph five of the original motion to suppress states that Defendant organizes his computer files in a certain way, which according to him, does not comport with information presented in the Search Warrant Application. (Doc. no. 32, p. 3.) As Defendant is the person with knowledge as to how he organizes his own files, there would be no need to hire a computer expert to prepare Defendant's personal affidavit.

[3]The pages from the Board Hearing, although not provided in a complete and sequential manner, appear to be discussing what agents discovered after the execution of the search warrant concerning the computer equipment seized from Defendant and the file-sharing program that led law enforcement agents to Defendant's IP address. (See doc. no. 38, p. 4 and Attach., pp. 4-6.)

3

claim that she observed several files hosted by Defendant was incorrect because "Defendant does not place his files in the typical C:/My shared folder which is how Lime Wire pulls files together for 'hosting' purposes" as stated in the affidavit in support of the search warrant request.[4] (Doc. no. 38, p. 3, ¶ 5.)

That same day, the Court granted an extension of time until October 12, 2010 for defense counsel to file a notice for the record as to whether a computer forensic expert had been retained and the estimated time line for examining the computer equipment at issue in this case. (Doc. no. 39, p. 2.) If no such expert had been hired by October 12, then a request for funds to hire an expert under 18 U.S.C. § 3006A(e)(1) was to be filed by that date so that an appropriate deadline could be set for an expert affidavit to be filed in support of the motions to suppress. (Id.) Defendant was also specifically cautioned that failure to comply with the terms of the Order would result in the pending suppression motions being treated as nullities for failure to comply with Loc. Crim. R. 12.1.[5] (Id.)

On October 12, prior to Defendant's response to the Court's September 28 Order, the government responded to the amended motion to suppress, noting the lack of evidentiary support and arguing that the motion was more in the nature of a challenge to the sufficiency of the government's evidence in the case rather than a challenge to the manner in which the search warrant was obtained. (See doc. no. 41.) In particular, the government pointed out that the motion relies on the <u>results</u> of the government's forensic examination of seized

---

[4]SA Ozden relied on the information from SA Lane to request the search warrant that is at issue.

[5]Loc. Crim. R. 12.1 provides, *inter alia*, that "[w]here allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted."

4

evidence to try to support an argument that the <u>application</u> process for the search warrant used to obtain the evidence was somehow tainted. (Id. at 1.) Thus, the government asked that the motion be denied outright. (Id. at 2.)

Defendant then timely filed a "Motion Pursuant to 18 U.S.C. [§] 3006A(e)(1)," requesting a hearing to determine whether he was financially unable to obtain investigative, expert, or other service necessary for adequate representation, thereby providing notice that he had not hired an expert. (Doc. no. 42.) In support of this request, defense counsel explained that the fee for experts varied greatly depending on whether the examination could be done at the expert's own lab or had to be done at a government facility; the minimum expense necessary would be "around five thousand dollars" if the examination could be done at the expert's lab, but would "run around twenty thousand" dollars if the examination had to be done at a government facility. (Id. at 2-3.) According to the motion, Defendant was "still awaiting word from the FBI" as to what type of examination would be allowed. (Id. at 3.) Of course, over two weeks earlier, the Court had already ruled (without objection from Defendant to the Order) that the government would not be required to turn over a copy of the computer information for Defendant's expert to examine away from a government facility. (Doc. no. 36.)

In any event, the maximum amount authorized by 18 U.S.C. § 3006A(e) for expert services "shall not exceed $2,400, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court . . . as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit." 18 U.S.C.

5

§ 3006A(e)(3). Yet despite this extraordinary request for funds, there was not so much as a curriculum vitae of the proposed expert, let alone a proposed billing rate or comparison of rates between more than one expert, attached to the motion.

Moreover, the motion requesting a hearing on the expert funds issue made no mention of needing expert services to support the pending motions to suppress. Rather, in support of the request for fees, defense counsel stated,

> The Defendant in the above styled case is charged with receipt and distribution of child pornography as a result of a computer forensic search conducted by the government. The defenses in the case are whether or not the defendant knowingly, possessed, received and/or distributed any such images. It would also be necessary to determine whether an image depicts an actual child, rather than a digitally-manipulated adult. It is also going to be vital to determine if the child pornography appeared without the Defendant[']s knowledge, as a result of internet chat room sharing and/or peer-to-peer file sharing programs. Simply put, computer based child pornography cases cannot be successfully defended without the aid of experts.

(Doc. no. 42, p. 2.) Nowhere in the motion does defense counsel mention needing expert services to challenge the manner in which the evidence in the case was collected, *i.e.*, to support a challenge to the search warrant via a motion to suppress. Rather, the entire motion is about needing an expert to support various defenses to the charges.

**B.  The Quest for Particularized Information Regarding Motions to Suppress Continues**

**1.  November 1, 2010 Status Conference**

Concerned with the lack of specific information regarding the need for an expert in relationship to the pending motions to suppress, the Court scheduled a status conference for

6

November 1, 2010.⁶ At the conference,⁷ the Court explained to defense counsel that his motions to suppress did not comply with requirements of Loc. Crim. R. 12.1 and that he had not provided sufficiently definite information for the Court to find that a substantial claim had been presented such that an evidentiary hearing was warranted.⁸ FTR 11:38.39 - :40.55. The Court also directly asked defense counsel to explain why he needed an expert witness to comply with the dictates of Loc. Crim. R. 12.1 insofar as providing particularized information in support of Defendant's theory of suppression. FTR 11:42.34 - :42.44. According to defense counsel, the expert that he wants to hire has told him that the images retrieved from Defendant's IP address are not from Defendant's computer or any computer that has been associated with Defendant, and that there is no evidence that Defendant was responsible for the images. FTR 11:42.50 - :43.55.

The Court responded by pointing out that while those arguments may mount a challenge to the sufficiency of the government's evidence in the case, they are not

---

⁶Although Defendant waived his right to personally appear at the status conference (doc. no. 46), he was represented at the proceedings by his retained counsel.

⁷Although a transcript of the status conference has not been prepared, the Court has been able to review the proceedings on the Court's recording system, For the Record ("FTR").

⁸A district court should grant a request for an evidentiary hearing when the moving papers, including the affidavits, are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (quoting United States v. Poe, 462 F.2d 195, 197 (5th Cir. 1972)). However, a district court is not compelled to grant an evidentiary hearing when a defendant promises to allege at a hearing what he has failed to allege in his motion papers. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000). Thus, the burden is upon Defendant to allege facts that would, if proven true, entitle him to relief. United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994).

7

appropriate in pre-trial proceedings, and in particular a motion to suppress, because criminal summary judgment proceedings are not permitted.[9] FTR 11:43.55 - :44.02. Counsel then tried to tell the Court that the search warrant was obtained based on inaccurate information, but when pressed, his only specific example of this alleged inaccurate information was that the images were retrieved from Defendant's computer or something under his control. FTR 11:44.04 - :44.32. However, when asked to point to the portion of the Search Warrant Application that contained factually inaccurate information, counsel was forced to concede that there was actually no falsehood in the paperwork; rather, he claimed that the information "leads to the Court to believe" that Defendant was associated with the images by virtue of connecting the targeted IP address with Defendant. FTR 11:44.34 - :50.40 (discussing ¶¶ 24-26 of the Search Warrant Application).

Undeterred by the Court's assessment that counsel was attempting to argue the merits of the case rather than making an argument for suppression, counsel persevered in his reasoning that connecting the name of a person to an IP address does not equate to showing that certain images could be found on that person's computer and that he needed an expert to explain the technicalities of why that is true. FTR 11:50.48 - :53.07. The Court understood the crux of defense counsel's argument to be that his expert has told him that "an IP address doesn't mean anything," and "I don't know how they got a search warrant." FTR 11:52.44 - :52.58. Having finally reached a point that appeared to have something to do with the motions to suppress, the Court instructed defense counsel to file an affidavit from his expert attesting to that argument. FTR 11:52.58 - :53.08. Defense counsel continued to

---

[9] See United States v. Salman, 378 F.3d 1266, 1268-69 (11th Cir. 2004).

protest that his problem remained the cost of hiring an expert and to argue that the Court should allow some "latitude" with respect to the restrictions on examining evidence contained in 18 U.S.C. § 3509(m) so that his expert fees would not be so high.[10] FTR 11:53.09 - :56.59.

At this point, the government offered clarification as the actual computer components at issue in this case: (1) a laptop; (2) an internal hard drive that was external to any computer; and (3) an external hard drive. FTR 11:57.00 - :57.28. The government's forensic examination of these three items revealed child pornography images on the internal hard drive that was external to any computer, and a "sanitized" version of that report has been provided to the defense. FTR 11:57.30 - :57.48. The laptop was not found to contain any images of child pornography and has been returned to Defendant;[11] the external hard drive was not functioning and could not be analyzed. FTR 11:57.49 - :59.33. Thus, it appears that

---

[10] 18 U.S.C. § 3509(m) prohibits the reproduction of child pornography in any criminal proceedings. Specifically, § 3509(m)(2)(A) & (B) provides:

(2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography. . . so long as the Government makes the property or material reasonably available to the defendant.

(B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

[11] The government did retain a registry report from the laptop that was returned to Defendant. FTR 12:01.15 - :01.19.

the only item in dispute which the defense has not obtained unrestricted access to is the internal hard drive that was external to any computer. FTR 11:59.53 - 12:00.08. Moreover, the government explained that the disputed evidence is located in Atlanta, as is Defendant's proposed expert, but there has been no effort made to look at the evidence under any proposed circumstance. FTR 12:01.55 - :02.59.

Defense counsel asked the Court if he could have his expert explain by telephone the problems attendant to examining the evidence in this case, and after receiving assurances that the expert was standing by for the call, the Court's call went unanswered. FTR 12:03.00; 12:07.17-:09.18. Nevertheless, the Court allowed defense counsel until November 15, 2010 to file an expert affidavit to support his representations at the status conference; counsel agreed that he would find a way to get the affidavit filed. FTR 12:10.00-:11.10; doc. no. 48.[12] The Court also explained that counsel could obtain some relief under the Criminal Justice Act by submitting the proper paperwork and justification to the presiding District Judge.[13] FTR 12:03.45 - :03.50.

### 2. The Long-Awaited Affidavits Arrive

Although Defendant filed his personal affidavit by the November 15 deadline (doc. no. 49), the defense also filed for another extension of time to file the expert's affidavit. (Doc. no. 50.) That motion was granted (doc. no. 51), and the affidavit of Neil Broom, Chief Executive Office, Senior Investigator, and Laboratory Director for Technical Resource

---

[12]The Court also allowed Defendant to have until November 15, 2010, to file his own personal affidavit. (Doc. no. 48.)

[13]To date, the docket does not reflect that counsel has filed a CJA 24 form to request any such relief.

Center, Inc., was filed on November 18, 2010 (doc. no. 52). Nearly two and one half months after the initial motion to suppress, and after a status conference dedicated to the issue of trying to decipher exactly why an expert was needed to support a motion to suppress, an affidavit was filed that never once mentions any particular details concerning the circumstances of Defendant's case. Rather, the affidavit reads more like a primer for mounting challenges to the restrictions on examining evidence pursuant to 18 U.S.C. § 3509(m).

Specifically, the affidavit starts out by describing Mr. Broom's technical credentials and then goes on to describe in generalized terms "the implications of § 3509(m) and how it [a]ffects a defendant's ability to defend against child pornography charges." (Doc. no. 52, Broom Aff., p. 2.) The affidavit describes "[t]he two most frequent and critical defenses in computer based child pornography cases" (whether an image depicts an actual child or digitally-altered adult and whether the image was knowingly possessed or received), and explains that "[t]he crux of mounting such a defense . . . is the ability to involve experts in the case from the start." (Id.) There is no mention of a motion to suppress or how Defendant's particular case would benefit from an expert. Nor is there any mention of defense counsel's representations at the November 1 status conference that connecting an IP address to the name of an individual associated with that unique identifier is insufficient or somehow misleading when agents seek to have a judicial officer issue a search warrant based on such information.

Having waited so long, and been so regularly reminded of the cost of an expert, the Court expected more. A large portion of Mr. Broom's affidavit consists of a little more than

11

paraphrasing, if not providing a verbatim recitation, of information in a 2007 magazine article that was written "to examine § 3509(m) of the Adam Walsh Act and how it impedes a defense attorney's ability to prepare for a trial involving charges of possession of child pornography." Ian N. Friedman and Kristina Walter, "How the Adam Walsh Act Restricts Access to Evidence," <u>Champion Magazine - National Association of Criminal Defense Lawyers</u>, Jan./Feb. 2007, at 12.[14] For example, "[t]he two most frequent and critical defenses in computer-based child pornography cases," along with the "popularity of Internet chat rooms and peer-to-peer file sharing programs" that allow for "a multitude of legitimate ways by which an image of alleged child pornography can appear on a hard drive" are discussed both at page two of Mr. Broom's affidavit and under the heading of Experts for the Defense in the 2007 magazine article. Moreover, it seems likely that defense counsel was aware of this 2007 article at least since October 12, 2010, when he filed his request for a hearing under 18 U.S.C. § 3006A(e)(1) and raised the same two defenses outlined above and the possibility of chat room sharing and/or peer-to-peer file sharing programs caused the child pornography to appear without Defendant's knowledge. (Doc. no. 42, p. 2.)

The Court can appreciate the benefit of attorneys keeping abreast of topical issues while reading targeted magazines. However, the Court fails to see the value of delaying filing requisite affidavits on the theory that a highly-priced expert is the only person who can explain computer technicalities regarding IP address information in a Search Warrant Application, only to have an affidavit submitted that summarizes general defense principles

---

[14] The Court read this article on-line by visiting http://www.nacdl.org, selecting Champion Magazine, Search All Public Articles by Key Word, and searching "Adam Walsh."

that have long been explained in the public domain and are not tied to any specific circumstances of the case at hand.

As to Defendant's personal affidavit, he acknowledges that he utilized the file sharing program Limewire to download files, but he swears that he never placed his files in a shared drive. (Doc. no. 49, Williams Aff. ¶ 5.) He also acknowledges that he did have a certain IP address at Fort Gordon that was listed in the Search Warrant Application but states that he gave his password to other users in the barracks.[15] (Id. ¶ 4.) He also states that he told the officers others had access to his IP address and emphasizes that no computer ever owned or used by him was identified as the computer from which SA Lane downloaded child pornography on the date listed in Search Warrant Application. (Id. ¶ 6.) Although Defendant does not state when he "told the officers" about others having access to his IP address, based on the chronology of events in the case, the Court presumes that this conversation with officers occurred after the execution of the search warrant.

## II. DISCUSSION

Having recounted the tortured procedural background of the motions to suppress, the Court turns its attention to whether Defendant has shown that a substantial claim for suppression exists. The Court concludes that Defendant has not made the required showing.

---

[15] The IP address listed in Defendant's affidavit is missing the last zero that is listed in the Search Warrant Application. (Compare doc. no. 38, Attach., p. 1, ¶ 24, with Williams Aff. ¶ 4.) However, as no one has contested the IP address connected to Defendant, the Court presumes that this was but a scrivener's error.

### A. Failure to Comply with Local Rules

Without even reaching the merits of the motions, they are subject to summary denial because they were not filed in compliance with the Court's Local Rules. Specifically, under Loc. Crim. R. 12.1:

> Unless otherwise ordered by the Court, every motion filed in a criminal proceeding shall be accompanied by a memorandum of law citing supporting authorities. Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion. Where allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted.

Here, as discussed in detail, *supra*, despite filing two motions to suppress and receiving at least three extensions of time to file affidavits in support of his motions to suppress, there is no affidavit in the record supporting Defendant's theory that law enforcement agents did anything improper in obtaining a search warrant. Defendant's expert affidavit is little more than a primer on common defenses to child pornography charges that does not mention any particular details of Defendant's case, let alone the words "IP address" or procedures agents followed in collecting information to obtain a search warrant.[16] (Doc.

---

[16]Defendant cannot be heard to complain that his lack of funds for hiring an expert prevented him from filing an appropriate expert affidavit. As discussed above, he was given multiple extensions of time, and when given the opportunity to have his expert appear by telephone at the November 1 status conference, the expert did not answer the phone. Moreover, the record does not show that defense counsel submitted the CJA 24 form requesting any amount of money for preparing an expert affidavit. In any event, according to defense counsel's representations at the status conference, his expert had already concluded that something was wrong with the initial investigation of Defendant's IP address prior to submission of his affidavit on November 18, 2010. Yet that affidavit never mentioned the words "IP address." (Doc. no. 52.)

14

no. 52.) Likewise, the affidavit from Defendant himself does not offer any information of wrong-doing by agents; rather it recounts that Defendant did not store his files in a shared drive, thereby suggesting that he could not have been the person hosting the files from IP address 24.181.46.230 observed by SA Lane. (Doc. no. 49.) However, the Search Warrant Application simply recounts that an agent observed files associated with a specific IP address, which was later discovered to have been assigned to Defendant. (Doc. no. 38, Attach., pp. 1-2.) Nor do the select (non-sequential) pages from the Board Hearing support Defendant's factual contentions that misleading, let alone knowingly misleading, information was presented to a judicial officer; rather they provide a general description of how the file-sharing program Limewire works and what the government discovered after the execution of the search warrant. (Id. at 4-6.)

In sum, there is absolutely no support for the proposition that agents knew <u>prior to</u> the execution of the search warrant anything about the way Defendant stored his files, let alone that they intentionally misrepresented such knowledge so as to mislead a judicial officer into issuing a warrant. Stated otherwise, the assertions in Defendant's motion are not <u>supported</u> by his citations to the discovery material or in his affidavits. The motion simply does not satisfy the dictates of the Local Rules that every factual assertion either be "<u>supported</u> by a citation to the pertinent . . . discovery material, or other evidence filed with the motion" or be <u>supported</u> by an affidavit submitted in support of the motion. Loc. Crim. R. 12.1 (emphasis added). Accordingly, the motions to suppress should be denied for failing to comply with the Local Rules. See, e.g., United States v. Farese, 451 F.2d 564, 566 (5th

Cir. 1971) (*per curiam*) (finding no error in denial of criminal pre-trial motions for failing to comply with local rules).[17]

## B. No Merit to Suppression Argument

Even if the Court were to disregard the requirements of the Local Rules, there is no merit to Defendant's argument for suppression. As detailed above, Defendant claims in his motions to suppress that misrepresentations and/or omissions were made in the Search Warrant Application that led to the discovery of child pornography. However, despite receiving <u>numerous</u> opportunities to identify specific misrepresentations or material omissions and despite receiving multiple extensions of time to provide affidavits in support of his theory, Defendant has failed to provide <u>any</u> evidence in support of his claim. Therefore, he cannot satisfy the dictates of Franks v. Delaware, 438 U.S. 154 (1978).

In Franks, the Supreme Court held that facially valid search warrant affidavits - such as the one in the instant case - may be challenged if: (1) the affidavit contains intentionally or recklessly false statements, and (2) the statements are material in the sense that they were necessary to the finding of probable cause. Id. at 171-72. Although Franks makes clear that an affidavit supporting an application for a search warrant is presumed to be valid, id. at 171, the Supreme Court set forth the following standard to obtain an evidentiary hearing to challenge alleged misrepresentations in a warrant application:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless

---

[17]In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

> disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Id.

Here, defense counsel conceded at the November 1, 2010 status conference that there was no falsehood contained in the Search Warrant Application but maintained that it was misleading because listing an IP address as identified with a particular person is not the same as showing that illegal images can be found on that person's computer equipment/ components. Defendant's position does not entitle him to a Franks hearing.

First, close examination of the Search Warrant Application reveals that law enforcement agents never stated that Defendant himself was offering the illegal files for download. Rather, the affidavit states that SA Lane "observed several files being hosted <u>by a user</u> whose IP address was 24.181.46.230." (Doc. no. 38, Attach., p. 1, ¶ 22 (emphasis added).) The affidavit goes on to state that SA Lane "viewed the list of files <u>being offered for download by IP address 24.181.46.230</u> which totaled 514 files." (Id. ¶ 23 (emphasis added).) A subpoena was then served "requesting subscriber information for the user of IP address 24.181.46.230," and the results of that subpoena indicated that the subscriber was Defendant. (Id. at 2, ¶¶ 25-26.) Thus, the judicial officer was informed that a unique IP address assigned to Defendant had been identified as offering illegal files for download. Whether it was Defendant who used IP address 24.181.46.230 to perform the acts charged in the Indictment is a matter for the jury, not a pre-trial suppression motion. For as the

Eleventh Circuit has explained:

> The district court's supervisory authority to dismiss indictments cannot be anchored to a kind of criminal summary judgment procedure. We recognize that our system of criminal procedure may result in legally meritless cases being sent to trial, but absent further legislative direction, it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance.

United States v. Salman, 378 F.3d 1266, 1268-69 (11th Cir. 2004).

Moreover, Defendant's suppression argument relies on information that could only be discovered <u>after</u> the execution of the search warrant and examination of the computer components seized to support his argument that agents knew <u>before</u> the search that illegal images would not be found on Defendant's computer components. This simply makes no sense. As was aptly explained by SA Ozden at the Board Hearing:

> At the time of the investigation, we don't know what particular media devices had child pornography on them. All we know is that there was a computer with a particular IP address that contained child pornography and when we did the search to find out who the owner was who had that IP address, we then had to go and search the home for any computers and, in this case when we searched the residence of Mr. Williams we came across the laptop and two other hard drives, and one internal hard drive contained images of child pornography.

(Doc. no. 11, Attach., pp. 17-18.)[18] The Search Warrant Application was therefore presented to seek permission to search for computers associated with an IP address - a unique identifier which was determined to have been assigned to Defendant. There was simply no way to

---

[18]Although Defendant submitted only three, non-sequential pages of the Board Hearing transcript, the Court was able to read the entirety of the transcript as submitted by the government on the date of Defendant's arraignment. (<u>See</u> doc. no. 11.)

18

know what, if anything, would be found until a search was conducted. The Search Warrant Application does not state otherwise, and Defendant has failed to mount a valid Franks challenge.

Thus, even if the motions were not due to be denied for failing to comply with the Local Rules, they should be denied on the merits.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motions to suppress be **DENIED**. (Doc. nos. 32, 38.)

SO REPORTED and RECOMMENDED this 27th day of January, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE